**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 24-85** |
| **JARON LOTT** | **SECTION "G"** |

**ORDER AND REASONS**

Before the Court is Defendant Jaron Lott's ("Lott") Motion to Suppress Evidence.[1] Lott moves the Court to suppress the blue ski mask and cell phone that were initially taken from him during an allegedly unconstitutional, warrantless detention and search on January 18, 2024.[2] Subsequently, Lott claims the blue ski mask, cell phone, and cell phone records were seized pursuant to search warrants, which Lott claims were illegally obtained in violation of his Fourth Amendment rights.[3] The government opposes the motion.[4] The Court held a hearing and oral argument on the motion on May 14, 2026.

For the reasons discussed in more detail below, the Court finds that the initial detention of Lott was reasonable, as the officers were permitted to detain Lott for officer safety and to facilitate the execution of a search warrant.[5] Once detained, Lott consented to the search of his pockets.

---

[1] Rec. Doc. 173.

[2] Rec. Doc. 173-1 at 1, 6.

[3] *Id.*

[4] Rec. Doc. 184.

[5] *See Michigan v. Summers*, 452 U.S. 692, 702–03 (1981).

1

With respect to the search warrants to seize the items, Lott has not met his burden of showing that officers made any false statements in the warrants or that they did so intentionally and with reckless disregard for the truth. Therefore, Lott is not entitled to a *Franks* hearing because he has not made a sufficient preliminary showing that law enforcement obtained the warrants by recklessly including material falsehoods in the warrant affidavits.[6] Furthermore, even if Lott had made a sufficient preliminary showing, he still would not be entitled to relief. This is because after excising the alleged false statements the affidavits' remaining content was sufficient to establish probable cause.[7] Accordingly, having considered the motion, the memoranda in support and in opposition, the evidence and argument presented at the hearing, the record, and the applicable law, the Court denies the motion.

## I. Background

### A.    *Procedural Background*

On April 11, 2024, co-defendants Terrin Whitley and Kindell Walker were charged by an Indictment filed in this Court with multiple firearm and drug trafficking offenses.[8] On October 4, 2024, charges against five additional co-defendants were brought in this case through a Superseding Indictment.[9] Lott is charged in two counts of the Superseding Indictment with Hobbs Act Robbery (Count One) and brandishing a firearm in furtherance of a crime of violence (Count

---

[6] *Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017) (citing *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978)). During the May 14, 2025 hearing, the Court gave the defense the opportunity to proffer testimony from Detective Heintz, but defense counsel declined.

[7] *See United States v. Kendrick*, 980 F.3d 432, 442 (5th Cir. 2020).

[8] Rec. Doc. 11.

[9] Rec. Doc. 49.

Two).[10] The Superseding Indictment alleges that Lott and his co-defendants robbed United Parcel Service ("UPS") employees on or about November 29, 2023.[11]

This matter is currently set for trial on August 3, 2026.[12] On March 3, 2026, Lott filed the instant Motion to Suppress Evidence.[13] On April 1, 2026, the government filed an opposition to the motion. [14] On May 1, 2026, Lott filed a reply brief.[15] The Court held a hearing and oral argument on the motion on May 14, 2026 at 10:00 AM.

## B.   *Factual Background*

On November 29, 2023, at approximately 2:46 PM, the Jefferson Parish Sheriff's Office ("JPSO") received a 911 call about an armed robbery on Burntwood Drive in Harvey, Louisiana.[16] Responding officers reported to the scene and met with two UPS employees.[17] While the UPS employees were delivering packages on their route, their UPS truck was blocked by several vehicles.[18] Multiple armed subjects approached the truck asking about "weed."[19] The driver of the UPS truck stayed inside the vehicle, while the other UPS employee backed away from the

---

[10] *Id.*

[11] *Id.*

[12] Rec. Doc. 181.

[13] Rec. Doc. 173.

[14] Rec. Doc. 184.

[15] Rec. Doc. 188.

[16] Rec. Doc. 173-4 at 5 (Supplemental Report of Detective Heintz).

[17] *Id.*

[18] *Id.* at 5–6.

[19] *Id.*

vehicle.[20] The employee who backed away from the vehicle stated that one of the armed subjects threatened to pistol whip him.[21] The employee described that one of the individuals was wearing a blue mask and was armed with a black handgun.[22] The government alleges this individual was Jaron Lott. During the robbery, the subjects took a number of packages from the truck.[23]

On January 18, 2024, Lott was arrested by JPSO and Louisiana State Police ("LSP") officials at 61 Jacqueline Street in Harvey, Louisiana, on charges unrelated to this case.[24] That day, officers set up surveillance at the residence, intending to effectuate a search warrant.[25] The search warrant for 61 Jaqueline Street was obtained in a separate criminal investigation from the UPS robbery investigation, and the validity of the search warrant for 61 Jaqueline Street is not at issue in the instant motion.

Before the search warrant was executed, officers observed a 2015 Jeep Cherokee back into the residence's driveway.[26] There were three individuals inside the vehicle, including Lott who was in the front passenger seat of the vehicle.[27] At 2:49 PM, the JPSO Special Weapons and

---

[20] *Id.* at 5.

[21] *Id.*

[22] *Id.*

[23] *Id.* at 6.

[24] Rec. Doc. 184-1 at 3–4 (Narrative Report of Jack Uhle).

[25] *Id.* at 3.

[26] *Id.*

[27] *Id.* The police report states that law enforcement observed a potential hand-to-hand drug transaction between the driver of the vehicle and someone who exited the residence. Because this information was not relayed to the SWAT team, the government does not rely on this as a basis for the detention Rec. Doc. 184 at 4, n.2.

Tactics ("SWAT") team arrived and initiated the search.[28] According to the police report, the individuals inside the vehicle were detained and, for officer safety, a JPSO deputy conducted a "pat down" of Lott.[29] The deputy asked Lott if he could retrieve items he felt in his pocket, and Lott consented.[30] The deputy recovered a black scale, a blue ski mask, and 10 dosage units of Tapentadol.[31] Lott was placed under arrest for the drugs and due to active arrest warrants from Jefferson Parish.[32] Based upon the items recovered from Lott and the smell of marijuana emanating from the vehicle, the Jeep was searched, and a rifle was recovered from the rear of the vehicle.[33] Lott was later booked for being a fugitive, felon in possession of a firearm, possession of a firearm and controlled dangerous substances, and a municipal attachment.[34]

On January 29, 2024, JPSO Detective Brian Heintz applied for a search warrant to retrieve Lott's cell phone.[35] The same day, a judge in the 24th Judicial District Court for the Parish of Jefferson issued the warrant.[36] On February 1, 2024, Detective Heintz applied for a search warrant

---

[28] Rec. Doc. 184-1 at 3 (Narrative Report of Jack Uhle).

[29] *Id.*

[30] *Id.*

[31] Rec. Doc. 184-1 at 3 (Narrative Report of Jack Uhle); Rec. Doc. 184-2 (Jaron Lott Arrest History).

[32] Rec. Doc. 173-3 (Narrative Report of Evan Keller); Rec. Doc. 184-2 (Jaron Lott Arrest History).

[33] Rec. Doc. 184-2 (Jaron Lott Arrest History).

[34] *Id.*

[35] Rec. Doc. 173-8 (Affidavit for Search Warrant for Cell Phone).

[36] *Id.*

for Lott's cell phone records from November 22, 2023 to February 1, 2024.[37] The same day, a judge in the 24th Judicial District Court for the Parish of Jefferson issued the warrant.[38]

On March 14, 2024, co-defendant Terrin Whitley was pulled over for a traffic stop and arrested for marijuana-related charges.[39] After being advised of his *Miranda* rights, Whitley was interviewed about the UPS robbery.[40] Whitley initially denied any knowledge of the UPS robbery but later admitted to being on the scene, claiming he just happened to turn down that street and was not involved.[41] Whitley admitted to knowing the individuals involved in the robbery, provided nicknames for the co-defendants who were later charged in this case, and identified them in photographs.[42]

On March 18, 2024, Detective Heintz applied for a search warrant to retrieve the blue ski mask that Lott was wearing during the robbery, which was in his pocket the day he was arrested outside of 61 Jacqueline Street.[43] The blue ski mask was being held at the jail with Lott's other personal property. On March 18, 2024, a judge in the 24th Judicial District Court for the Parish of Jefferson issued the warrant.[44]

---

[37] Rec. Doc. 173-8 (Affidavit for Search Warrant for Phone Records).

[38] *Id.*

[39] Rec. Doc. 173-4 at 19 (Supplemental Report of Detective Heintz).

[40] *Id.* at 20.

[41] *Id.*

[42] *Id.* at 20–21.

[43] Rec. Doc. 173-6 (Affidavit for Search Warrant for Clothing).

[44] *Id.*

## II. Parties' Arguments

### A.   Lott's Arguments in Support of the Motion to Suppress

Lott moves the Court to suppress the blue ski mask and cell phone that was initially taken from him during an allegedly unconstitutional, warrantless detention and search on January 18, 2024.[45] Subsequently, Lott claims this evidence was seized pursuant to search warrants, which Lott claims were illegally obtained in violation of his Fourth Amendment rights.[46]

First, Lott argues that the evidence was unlawfully seized on January 18, 2024, because he was not the target of the warrant authorizing the search of 61 Jacqueline Street.[47] Lott asserts he was merely a bystander posing no threat to law enforcement or their search.[48] Lott asserts he was not an occupant, resident, or known associate of the residence.[49] Since Lott was merely a passenger in a vehicle parked in the driveway, he contends that the officers lacked authority to detain him absent independent reasonable suspicion.[50] Lott argues that the authority to detain occupants of a residence during execution of a search warrant, which was recognized by the Supreme Court in *Michigan v, Summer*s,[51] does not extend to all persons found near the premises and does permit detention absent a meaningful connection between the individual and the residence being

---

[45] Rec. Doc. 173-1 at 1, 6.

[46] *Id.*

[47] *Id.* at 5.

[48] *Id.*

[49] *Id.* at 8.

[50] *Id.*

[51] *Summers*, 452 U.S. at 692.

searched.[52] Even if Lott were an occupant, he contends there is no evidence he posed a risk to safety or was a flight risk.[53] Since he was secured in a vehicle unrelated to the premises and he had no ability to interfere with the execution of the warrant, Lott contends that there was no authority to detain him during execution of the search warrant.[54]

Lott also contends that the officers lacked reasonable suspicion to detain him under *Terry v. Ohio*.[55] Lott contends there was no reasonable suspicion to justify his detention because there is no information to suggest he was acting nervously or evasively.[56] Even assuming that the detention was lawful, Lott contends there was no reason to search his person.[57]

Second, Lott argues that the warrants to seize the ski mask, to seize his cell phone, and to obtain his phone records were all invalid.[58] Lott contends that numerous inaccuracies appear in the affidavit Detective Heintz submitted to obtain the March 18, 2025 search warrant.[59] In particular, Lott points out the following alleged inaccuracies in Detective Heintz's affidavit: (1) Lott does not reside at 61 Jacqueline Street; (2) the Mazda from the robbery was not mentioned as connected to 61 Jacqueline Street in the affidavit to search that residence; (3) co-defendant Whitley never identified Lott as a gunman in connection with the UPS robbery; and (4) the video from the robbery

---

[52] Rec. Doc. 173-1 at 8.

[53] *Id.*

[54] *Id.*

[55] *Id.* (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

[56] *Id.*

[57] *Id.* at 9.

[58] *Id.* at 10.

[59] *Id.* at 5.

contradicts the statement in the affidavit that "multiple" suspects "armed with handguns" approached the UPS truck and demanded "weed."[60] As such, Lott argues that the seized evidence must be suppressed.[61] Alternatively, Lott requests a *Franks* hearing to test the veracity of the allegations that served as probable cause to issue the warrant.[62]

**B.    *The Government's Arguments in Opposition to the Motion***

The government opposes the motion to suppress because it asserts that the evidence was constitutionally obtained.[63] The government contends that the officers were permitted to briefly detain and pat down Lott while they were executing the search warrant for 61 Jacqueline Street, because Lott was located on the premises when the officers moved in to execute the search warrant.[64] The government asserts that the Fifth Circuit has considered vehicles in driveways to be on the premises.[65] Since the officers were allowed to temporarily detain Lott as they executed the search warrant, the government asserts Lott's argument fails because Lott then consented to an officer's removal of items from his pocket.[66]

With respect to the search warrants, the government asserts that Lott confuses the various search warrant documents.[67] Where a defendant attacks a search warrant for containing an alleged

---

[60] *Id.* at 11.

[61] *Id.* at 12.

[62] *Id.*

[63] Rec. Doc. 184.

[64] *Id.* at 7.

[65] *Id.* at 7–8 (citing *United States v. Napoli*, 530 F.2d 1198, 1200 (5th Cir. 1976)).

[66] *Id.* at 8.

[67] *Id.*

inaccuracy, the government asserts that the defendant bears the burden of showing "by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause."[68]

The government asserts that Lott cannot even show that the search warrant contains a false statement, much less that the officer acted intentionally or recklessly.[69] Even if the characterization of Whitley's interview was imprecise, the government asserts that Lott does nothing to show that Detective Heintz intentionally or recklessly included untrue statements in the search warrant.[70] Regardless of whether Whitley specifically identified Lott as one of the individuals with a gun, the government asserts that Whitley identified Lott as a participant in the armed robbery.[71] The government argues that Detective Heintz had more than sufficient probable cause to believe that Lott was involved in the UPS robbery and that the blue ski mask found in his pocket during his arrest was evidence of that crime.[72]

### C.    Lott's Arguments in Further Support of the Motion

In the reply brief, Lott reasserts his argument that his detention and search were not authorized by the search warrant of 61 Jacqueline Street.[73] Lott contends that the government

---

[68] *Id.* at 8–9 (quoting *United States v. Ortega*, 854 F.3d 818, 825–26 (5th Cir. 2017)).

[69] *Id.* at 9.

[70] *Id.*

[71] *Id.* at 10.

[72] *Id.* at 11.

[73] Rec. Doc. 188 at 1.

failed to show that his detention was necessary for officer safety, to facilitate the search, or to prevent occupants from fleeing.[74] According to Lott, the government's suggestion that the detention was needed for officer safety because the officer smelled "burnt marijuana" is unsupported because Lott had already been detained and removed from the car when the officers noted the smell of marijuana.[75] Lott also contends that his "consent" to the search does not invalidate his claim for suppression of the evidence because the atmosphere was coercive and intimidating.[76]

With respect to the allegedly invalid affidavits to support the search warrant, Lott asserts that the government overstates his burden for a *Franks* hearing.[77] Lott repeats the alleged inaccuracies in the affidavit that he identified in the initial motion.[78] Lott contends that the affidavit incorrectly states Whitley identified Lott as a gunman.[79] Lott asserts that a portion of Whitley's interrogation flatly and clearly refuted that claim.[80] According to Lott, the affiant's disregard for this portion of the interrogation leads to a clear inference of reckless disregard for the truth.[81]

---

[74] *Id.* at 2.

[75] *Id.*

[76] *Id.* at 3.

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.* at 4.

[81] *Id.*

### III. Legal Standard

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[82]

"The Fourth Amendment proscribes 'unreasonable searches and seizures.'"[83] "A warrantless search is presumptively unreasonable unless it falls within an exception to the Fourth Amendment's warrant requirement."[84] Generally, "on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the material in question was seized in violation of his constitutional rights," but "if a defendant produces evidence that he was arrested or subject to search without a warrant, the burden shifts to the government to justify the warrantless search."[85]

### IV. Analysis

Lott moves the Court to suppress the blue ski mask and cell phone that was initially taken from him during an allegedly unconstitutional, warrantless detention and search on January 18, 2024.[86] Subsequently, Lott claims this evidence was seized pursuant to search warrants, which

---

[82] U.S. Const. amend. IV.

[83] *United States v. Oliver*, 630 F.3d 397, 405 (5th Cir. 2011) (quoting U.S. Const. amend. IV).

[84] *United States v. Guzman*, 739 F.3d 241, 245–46 (5th Cir. 2014) (citing *United States v. Karo*, 468 U.S. 705, 717 (1984)).

[85] *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993) (internal citations omitted).

[86] Rec. Doc. 173-1 at 1, 6.

Lott claims were illegally obtained in violation of his Fourth Amendment rights. [87] Lott's arguments are addressed in turn.

## A.    *Detention and Search at 61 Jacqueline Street*

Lott moves the Court to suppress evidence that was seized from his person while officers were executing a search warrant on 61 Jacqueline Street. [88] When the search warrant was executed, Lott was a passenger in a vehicle parked in the driveway of the residence. Lott asserts that his detention was unconstitutional because he was merely a bystander posing no threat to law enforcement or their search. [89]

In *Michigan v. Summers*, the Supreme Court recognized that law enforcement officers may detain the occupant of a residence where a criminal search warrant is being executed. [90] "Consistent with the touchstone of the Fourth Amendment, however, the scope of such detentions must be reasonable." [91] The Supreme Court has explained that "[d]etentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake." [92] "The Court

---

[87] *Id.*

[88] *Id.* at 5.

[89] *Id.*

[90] *Summers*, 452 U.S. at 704–05 ("If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."). *See also Bailey v. United States*, 568 U.S. 186, 193 (2013) (officers executing a search warrant can "detain the occupants of the premises while a proper search is conducted.").

[91] *Okorie v. Crawford*, 921 F.3d 430, 432 (5th Cir. 2019) (citing *Summers*, 452 U.S. at 705, n.21).

[92] *Bailey*, 568 U.S. at 202 (quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)).

13

reasoned that three important law enforcement interests, taken together, justify the detention of an occupant who is on the premises during the execution of a search warrant: (1) officer safety, (2) facilitating the completion of the search, and (3) preventing flight."[93]

In *Bailey v. United States*, the Supreme Court limited its holding in *Summers*, confining it only to the "immediate vicinity of the premises to be searched."[94] The Court reasoned that "[o]nce an occupant is beyond the immediate vicinity of the premises to be searched, the search-related law enforcement interests are diminished and the intrusiveness of the detention is more severe."[95] In determining whether an individual is in the "immediate vicinity" of the premises, the Supreme Court instructed lower courts to consider factors such as the "lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors."[96]

These factors weigh in favor of a finding that Lott was in the immediate vicinity of the premises and properly detained. When the officers moved to execute the search warrant, three individuals were seated inside a Jeep with dark tinted windows parked in the driveway of 61 Jacqueline Street.[97] Lott does not argue that the driveway was outside the lawful limits of the premises. Instead, Lott suggests he was not posing a threat to the executing officers because he

---

[93] *United States v. Clayton*, 98 F.4th 256, 261 (5th Cir. 2024) (citing *Summers*, 452 U.S. at 702–03).

[94] *Bailey*, 568 U.S. at 202.

[95] *Id.* at 201.

[96] *Id.* Lott cites *United States v. Cavazos*, 288 F.3d 706 (5th Cir. 2002). In *Cavazos*, the court emphasized that "[t]he proximity between an occupant of a residence and the residence itself may be relevant in deciding whether to apply *Summers*, but it is by no means controlling." *Id.* at 712. The Fifth Circuit found the detention of a defendant two blocks from the residence to be searched was valid. *Id. Cavazos* pre-dates the Supreme Court's ruling in *Bailey*.

[97] Rec. Doc. 173-3 at 4.

14

was "secured in a vehicle unrelated to the premises" and he "had no ability to interfere with the execution of the warrant."[98] This argument is unpersuasive as Lott was not "secured" in the vehicle. He was seated in the front passenger seat and there was another individual in the driver's seat. The occupants of the vehicle clearly could have impeded the completion of the search or posed a threat to the executing officers. The photographs of the premises that the government offered into evidence during the hearing further reinforce this point. The vehicle was parked mere steps from the front door of the residence.[99] The close proximity of the vehicle to the residence makes clear it would not have been feasible for the officers to ensure officer safety without detaining the individuals in the vehicle.

Lott asserts that the officers should not have detained him because he was not an occupant, resident, or known associate of the residence. This argument presents the question—how could the officers have obtained this information without briefly detaining Lott?[100] The Fifth Circuit has found that vehicles in driveways are considered to be on the premises.[101] Similarly, in *Summers*,

---

[98] Rec. Doc. 173-1 at 8.

[99] Rec. Doc. 189-1 at 2.

[100] Lott relies on a case decided by the Eighth District Court of Appeal of Ohio. *State v. Williams*, 2011-Ohio-2397, ¶ 12, 194 Ohio App. 3d 431, 436, 956 N.E.2d 887, 890. There, the court observed that "[t]he warrant authorized the officers to search only the target address. Before the officers could even ascertain whether Williams had any connection whatsoever to the target address, they had him on the ground and handcuffed, elevating the nature of the encounter beyond simply detaining Williams for officer safety." *Id.* Unlike *Williams*, here, the evidence shows that the officers detained Lott and patted him down for officer safety. Rec. Doc. 173-3 at 4. Lott then consented to an officer removing the items from inside his pocket. *Id.*

Lott also relies on a case decided by the Second District Court of Appeal of Florida. *Bergeron v. State*, 583 So. 2d 790 (Fla. Dist. Ct. App. 1991). There the court found that a driver's stopping in a driveway and walking toward the residence did not "support finding of reasonable suspicion" to justify search under warrant authorizing search of persons found on premises, because the driver "was not located within premises described by warrant, which literally authorized search of persons inside structure." *Id.* at 791. The court concluded that the search was not authorized by the search warrant, but it did not consider whether authority to detain the individual under *Summers* was present.

[101] *United States v. Napoli*, 530 F.2d 1198, 1200 (5th Cir. 1976) (search warrant's "reference to 'on the

the individual was detained as he was descending the front steps of the property.[102] Therefore, the detention of Lott was consistent with Supreme Court and Fifth Circuit authority.

Because the officers were allowed to temporarily detain Lott as they executed the search warrant, Lott's argument fails, as Lott then consented to an officer's removal of items from his pocket.[103] Lott suggests that the consent was coerced. He relies on caselaw holding that "consent did not purge the primary taint of the illegal stop." [104] Here, the initial detention of Lott was not illegal. Therefore, there is no basis to suppress the evidence that was seized during the lawful detention of Lott. Moreover, even assuming that Lott's consent was coerced, this argument fails. Even if Lott did not provide adequate consent to search his pockets, Lott had outstanding warrants for his arrest.[105] Thus, because the initial detention of Lott was lawful, he could have been taken into custody solely based on the outstanding warrants.

### B.    Search Warrant for the Property

Lott claims the blue ski mask, cell phone, and cell phone records were seized pursuant to search warrants, which Lott claims were illegally obtained in violation of his Fourth Amendment rights.[106] "The purpose of a warrant is to allow a neutral judicial officer to assess whether the

---

premises known as 3027 Napoleon Avenue' was sufficient to embrace the vehicle parked in the driveway on those premises.").

[102] *Summers*, 452 U.S. at 694.

[103] Rec. Doc. 173-3 at 4.

[104] *United States v. Yousif*, 308 F.3d 820, 831 (8th Cir. 2002); *United States v. Valdez*, 931 F.2d 1448, 1452 (11th Cir. 1991) ("Valdez's consent was tainted by the illegal pretextual stop and detention."). Here, the initial detention of Lott was not illegal.

[105] Rec. Doc. 173-3 (Narrative Report of Evan Keller); Rec. Doc. 184-2 (Jaron Lott Arrest History).

[106] Because the items of clothing could have been taken from Lott during the arrest, it is not clear that a search warrant was even necessary to retrieve the mask. When Lott was booked at the jail, his clothing and personal items

16

police have probable cause to make an arrest or conduct a search."[107] A search warrant "is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police."[108] "[G]reat deference" is given to the magistrate judge's finding of probable cause for issuance of a warrant.[109] However, "the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based."[110] Thus, suppression is an appropriate remedy when the magistrate judge is "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."[111]

In addressing whether to conduct an evidentiary hearing on the validity of a warrant under *Franks v. Delaware*, the Supreme Court has determined that "the Fourth Amendment entitles a defendant to a hearing on the veracity of a warrant affidavit if he can make a sufficient preliminary showing that the affiant officer obtained the warrant by recklessly including material falsehoods in a warrant application."[112] If the preliminary showing is made and the hearing is granted, a

---

were collected and held in jail inventory. A search warrant to retrieve the mask was an administrative requirement of the jail.

[107] *Steagald v. United States*, 451 U.S. 204, 212 (1981).

[108] *Id.* at 213.

[109] *United States v. Leon*, 468 U.S. 897, 914 (1984).

[110] *Id.*

[111] *Id.* at 923.

[112] *Melton*, 875 F.3d at 262 (citing *Franks*, 438 U.S. at 171–72).

warrant "must be voided if the defendant shows by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause."[113] To resolve a challenge to an affidavit's veracity, the Court must first determine "if it contains a false statement or material omission."[114] If so, the Court must determine whether "the false statement [or omission was] made intentionally or with reckless disregard for the truth."[115] Finally, "if the false statement is excised, does the remaining content in the affidavit fail to establish probable cause?"[116]

Lott points out the following alleged inaccuracies in Detective Heintz's affidavits: (1) Lott does not reside at 61 Jacqueline Street; (2) the Mazda from the robbery was not mentioned as connected to 61 Jacqueline Street in the affidavit to search that residence; (3) co-defendant Whitley never identified Lott as a gunman in connection with the UPS robbery; and (4) the video from the robbery contradicts the statement in the affidavit that "multiple" suspects "armed with handguns" approached the UPS truck and demanded "weed."[117] The alleged inaccuracy regarding multiple suspects being armed with handguns is found in the affidavit for the cell phone records and the affidavit for the ski mask.[118] The other alleged inaccuracies are only found in the affidavit for the

---

[113] *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017) (citing *Franks*, 438 U.S. at 155–56).

[114] *United States v. Kendrick*, 980 F.3d 432, 440 (5th Cir. 2020).

[115] *Id.* (citing *Ortega*, 854 F.3d at 826).

[116] *Id.* (citing *Ortega*, 854 F.3d at 826).

[117] Rec. Doc. 173-1 at 11.

[118] Rec. Doc. 173-9 (Affidavit for Search Warrant for Cell Phone Records); Rec. Doc. 173-6 (Affidavit for Search Warrant for Clothing).

clothing search warrant.[119] Each of these alleged inaccuracies is addressed in turn.

First, Lott argues that Detective Heintz falsely attested that Lott resided at 61 Jaqueline Street. During oral argument, the government asserted that an identification card belonging to Lott was found during the search of the residence. Therefore, Lott has not shown that this statement was false. Even if the statement is untrue, there is nothing to suggest it was made intentionally or with reckless disregard for the truth.

Second, Lott takes issue with Detective Heintz's statement that a Mazda used in the UPS robbery was associated with 61 Jacqueline Street, because that information was not included in the search warrant for the residence. The search warrant for 61 Jaqueline Street was obtained in a completely separate criminal investigation from the UPS robbery investigation, while the Mazda was used in the UPS robbery. The fact that this information was not contained in the search warrant affidavit for 61 Jaqueline Street does not in itself render the information untrue. Lott does not present any information to show that Detective Heintz's statement that the Mazda was associated with 61 Jacqueline Street was false. Detective Heintz's police report indicates that the Mazda was observed parked at the corner of Justin Lane and Jacqueline Street on at least two occasions.[120] Therefore, it does not appear that this statement was false. Moreover, even if the statement was untrue, Lott has not presented any information to suggest it was made intentionally or with reckless disregard for the truth.

Third, Lott claims Detective Heintz falsely attested that Whitley "identified multiple other

---

[119] Rec. Doc. 173-6 (Affidavit for Search Warrant for Clothing).

[120] Rec. Doc. 173-4 at 12 (Supplemental Report of Detective Heintz). This is the closest intersection to 61 Jacqueline Street.

perpetrators of the armed robbery, more specifically he identified Jaron Lott as being one of the gunmen." Lott does not dispute that Whitley identified him as one of the perpetrators of the UPS robbery, but he contends that Whitley did not identify Lott as one of the individuals with a handgun. At one point in the interview, Whitley says that all of the participants in the armed robbery had guns.[121] Whitley then names certain individuals he thought had guns during the robbery and does not include Lott in that list.[122] The supplemental police report recites the victims' accounts that multiple perpetrators had guns.[123] The victims specifically identified the individual with the blue ski mask, who the government alleges was Lott, as being armed.[124] Accordingly, it is not clear that the statement in the search warrant is untrue. Moreover, even if the statement was inaccurate, Lott has not shown it was made intentionally or with reckless disregard for the truth.

Fourth, Lott asserts that Detective Heintz falsely stated that "multiple" suspects "armed with handguns" approached the UPS truck and demanded "weed." Lott suggests that this statement is contradicted by the video footage recovered from the UPS truck. Regardless of how many guns can be seen in the surveillance video, the supplemental police report clearly recites the victims' accounts that multiple perpetrators had guns.[125] Therefore, Lott has not demonstrated that this statement was false, and there is nothing to suggest it was made intentionally or with reckless disregard for the truth.

---

[121] Rec. Doc. 184-3 (Video Interview of Whitley at 23:48:30 to 23:48:40).

[122] *Id.* (Video Interview of Whitley at 23:48:56 to 23:49:12).

[123] Rec. Doc. 173-4 at 6 (Supplemental Report of Detective Heintz).

[124] *Id.*

[125] *Id.*

Lott has not met his burden of showing that Detective Heintz made any false statements in the warrants or that he did so intentionally and with reckless disregard for the truth. Therefore, Lott is not entitled to a *Franks* hearing because he has not made a sufficient preliminary showing that Detective Heintz obtained the warrants by recklessly including material falsehoods in the warrant affidavits.[126] Furthermore, even if Lott had made a sufficient preliminary showing, he still would not be entitled to relief because, if the alleged false statements are excised, the affidavits' remaining content was sufficient to establish probable cause.[127]

The only alleged inaccuracy in the affidavit for the cell phone records is that "multiple" suspects were armed with handguns. The affidavit for the cell phone records details the investigation of the UPS robbery, the interview with the victims, and the review of surveillance footage.[128] Detective Heintz attests that a reliable confidential informant indicated that the occupants of the Mazda used in the UPS robbery frequented 61 Jacqueline Street.[129] According to the affidavit, a Mazda with damage similar to the one seen in the surveillance footage was documented as being near 61 Jacqueline Street, and a stolen Mitsubishi Eclipse was observed parked in the same location where the Mazda was previously parked.[130] The affidavit states that during the execution of the search warrant on 61 Jacqueline Street six males were encountered,

---

[126] *Melton*, 875 F.3d at 262 (citing *Franks*, 438 U.S. at 171–72).

[127] *See Kendrick*, 980 F.3d at 442.

[128] Rec. Doc. 173-9 (Affidavit for Search Warrant for Cell Phone Records).

[129] *Id.* at 2.

[130] *Id.*

fitting the general description of the perpetrators, and five firearms were seized.[131] The unchallenged content from the affidavit contains sufficient information to establish probable cause to believe that Lott was involved in the UPS robbery and that the blue ski mask found in his pocket during his arrest was evidence of that crime.

With respect to the search warrant for the ski mask, Lott contends that all four alleged inaccuracies were contained in the affidavit. Again, as discussed above, Lott has not met his burden of showing that these four statements were false. Further, even if the Court were to excise these allegedly false statements from the affidavit, the remainder of the affidavit's content was sufficient to establish probable cause. The search warrant affidavit for the ski mask includes similar details to those contained in the search warrant affidavit for the cell phone records. It details the investigation, the interview with the victims, and the review of surveillance footage.[132] The affidavit also includes additional details on the surveillance of Whitley and Whitley's subsequent interview with police.[133] The affidavit states that Lott matches the general physical description of one of the suspects observed exiting the Mazda sedan during the UPS robbery.[134] The affidavit also states that Lott's clothing, which was in jail inventory at the Jefferson Parish Correctional Center, was "similar in style and type to that used by the suspect in the armed robbery."[135]

Excluding these allegedly untrue statements, there was sufficient probable cause to believe

---

[131] *Id.*

[132] Rec. Doc. 173-6 at 1–2 (Affidavit for Search Warrant for Clothing).

[133] *Id.* at 2–3.

[134] *Id.* at 3.

[135] *Id.*

22

that Lott was involved in the UPS robbery and that the blue ski mask found in his pocket during his arrest was evidence of that crime. Whether or not Whitley specifically identified Lott as one of the individuals with a gun, Lott does not dispute that Whitley identified him as a participant in the armed robbery. The affidavit states that Whitley identified multiple perpetrators of the armed robbery, including Lott. Therefore, even if the statement that Lott was identified as a gunman is removed from the affidavit, the unchallenged portion of the affidavit stating that Whitley identified Lott as a perpetrator would remain. Whitley's identification of Lott was corroborated by the rest of the evidence gathered, including the blue mask that was found on Lott when he was arrested. The unchallenged content from the affidavit contain sufficient information to establish probable cause to believe that Lott was involved in the UPS robbery and that the blue ski mask found in his pocket during his arrest was evidence of that crime.

"Probable cause exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought [by the warrant] constitute fruits, instrumentalities, or evidence of a crime."[136] The unchallenged content from the affidavits contain sufficient information to establish probable cause to believe that Lott was involved in the UPS robbery. Therefore, even if Lott had made a sufficient preliminary showing that Detective Heintz obtained the warrants by recklessly including material falsehoods in the warrant affidavits, he still would not be entitled to relief. This is because if the alleged false statements are excised the affidavits' remaining content was sufficient to establish

---

[136] *Kendrick*, 980 F.3d at 440 (quoting *Kohler v. Englade*, 470 F. 3d 1104, 1109 (5th Cir. 2006)).

23

probable cause.[137]

Finally, even if a search warrant is determined to be unsupported by probable cause, evidence obtained by officers in "objectively reasonable good-faith reliance" on the warrant is admissible.[138] The good-faith exception to the exclusionary rule does not apply when a warrant is based on an affidavit that is deliberately false or made in reckless disregard of the truth. [139] Lott has not demonstrated that the affidavits were deliberately false or made in reckless disregard of the truth. Therefore, even assuming that the search warrants were not based on probable cause, the good-faith exception would apply.

### V. Conclusion

For the reasons discussed above, the Court finds that the initial detention of Lott was reasonable, as the officers were permitted to detain Lott for officer safety and to facilitate the execution of a search warrant.[140] Once detained, Lott consented to the search of his pockets. With respect to the search warrants to seize the items, Lott has not met his burden of showing that officers made any false statements in the warrants or that they did so intentionally and with reckless disregard for the truth. Therefore, Lott is not entitled to a *Franks* hearing because he has not made a sufficient preliminary showing that law enforcement obtained the warrants by recklessly including material falsehoods in the warrant affidavits.[141] Furthermore, even if Lott had made a

---

[137] *See Kendrick*, 980 F.3d at 442.

[138] *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir.1993) (citing *United States v. Leon*, 468 U.S. 897, 922–23 (1984)).

[139] *Leon*, 468 U.S. at 914.

[140] *See Summers*, 452 U.S. at 702–03.

[141] *Melton*, 875 F.3d at 262 (citing *Franks*, 438 U.S. at 171–72).

sufficient preliminary showing, he still would not be entitled to relief because, if the alleged false statements are excised, the affidavits' remaining content was sufficient to establish probable cause.[142] Accordingly,

IT IS HEREBY ORDERED that Defendant Jaron Lott's Motion to Suppress Evidence[143] is DENIED.

NEW ORLEANS, LOUISIANA, this __9th__ day of June, 2026.

NANNETTE JOLIVETTE BROWN
UNITED STATES DISTRICT JUDGE

---

[142] *See Kendrick*, 980 F.3d at 442.

[143] Rec. Doc. 173.